```
_____ FILED _____ LODGED
_____ RECEIVED
```

Apr 08, 2020

```
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT TACOMA
BY_____ DEPUTY
```

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON
## AT TACOMA

UNITED STATES OF AMERICA,

        Plaintiff,

    v.

KENNETH FRANCIS SIMMONS,

        Defendant.

CASE NO. 3:19-cr-05372-BHS-1

ORDER ON MOTION FOR
REVIEW OF DETENTION ORDER

On October 28, 2019, this Court conducted a detention hearing under 18 U.S.C. § 3142(f) and ordered defendant detained at the Federal Detention Center as he awaited trial on seven felony counts, including possession with intent to distribute and distribution of methamphetamine, felon in possession of a firearm, and possession of a firearm in furtherance of a drug trafficking crime. *See* Dkt. 14. Defendant seeks to have this Court reevaluate that detention order in light of the current COVID-19 health emergency. *See* Dkt. 35.

The Court, having conducting another hearing and having considered additional evidence, concludes that the risk factors associated with defendant's release outweigh the risk factors associated with continued detention and therefore denies defendant's motion. *See* Dkt.

35.  There are no conditions or combination of conditions of supervision that would reasonably assure defendant's appearance as required or the safety of any other person and the community.

## I.  HEALTH EMERGENCY

The Western District of Washington is currently in the throes of the Novel Coronavirus (COVID-19) pandemic, as described in Washington State Governor Jay Inslee's many proclamations (*e.g.*, 20-06, 20-07, 20-08, 20-09, 20-10, 20-11, 20-12, 20-13, 20-14, 20-25, *et. seq.*) and as evidenced by information published on the Washington State Coronavirus Response (COVID-19) website. *See* https://www.coronavirus.wa.gov.

On March 22, 2020, the President of the United States declared that a major disaster exists in the State of Washington and ordered Federal assistance due to COVID-19 in affected areas beginning on January 20, 2020 and continuing.  *See* https://www.whitehouse.gov/briefings-statements/president-donald-j-trump-approves-washington-disaster-declaration-2/.

## II.  PROCEDURAL SETTING

Because of the ongoing health emergency, the Honorable Ricardo S. Martinez, Chief Judge of the United States District Court for the Western District of Washington, issued General Orders 01-20 thru 04-20, limiting public access to the federal courthouses and authorizing various remote criminal procedures during the health emergency.  *See* https://www.wawd.uscourts.gov/general-orders-current.

Pursuant to General Orders 03-20 and 04-20, the Court arranged for a remote video hearing to consider defendant's motion.  Defendant, after consultation with counsel, waived physical presence at the courthouse and consented on the record to participate in the hearings by video or telephone conference. Defendant was present at the Federal Detention Center ("FDC") and appeared via WebEx with the rest of the participants. His participation was momentarily

interrupted by limited video connectivity but was eventually fully restored. Each of the other participants connected remotely via WebEx from various locations, some by video and others telephonically. The Court appeared by video for most of the proceeding. At the end of the proceeding, when the Court's video was interrupted for several minutes due to connectivity issues, defendant consented for the Court to appear by telephone.

Defense counsel and defendant were advised by the Court that if either of them wanted to have the opportunity to talk in a confidential attorney-client consultation by telephone during the hearing, they should alert the Court. The Court provided an opportunity for such a conversation by facilitating a separate phone line between defendant and his counsel and allowing either of them to take a recess during the hearing, if requested. At one point, defendant wished to participate by offering testimony and did so after waiving his right to consult with counsel. Counsel agreed to allow him to testify. Defendant then provided information on his current conditions at the FDC.

A court reporter was also connected via WebEx, in order to provide an official record of the proceedings. The public was also allowed audio connectivity to the proceeding. All parties were cautioned against any form of recording of the hearing.

The Court finds that the hearing conducted via WebEx complied with the protocol published by Chief Judge Martinez, including General Orders 03-20 and 04-20.

### III. ANALYSIS

Defendant is charged by way of an indictment in the United States District Court for the Western District of Washington with seven felony counts: one count of felon in possession of a firearm, one count of possession of a firearm in furtherance of a drug trafficking crime, one

count of possession with intent to distribute methamphetamine, and four counts of distribution of methamphetamine.

The Court must "hold a hearing to determine whether any condition or combination of conditions set forth in" 18 U.S.C. § 3142(c) "will reasonably assure the appearance" of a defendant and "the safety of any other person and the community." 18 U.S.C. § 3142(f)(1)(A). In making this determination, the Court must consider factors set forth in 18 U.S.C. § 3142(g), which include,

> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence . . . ;
> (2) the weight of the evidence against the person;
> (3) the history and characteristics of the person, including—
>     (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>     (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g). The weight of the evidence is the least important factor to consider. *United States v. Motamedi*, 767 F.2d 1403, 1406 (9th Cir. 1985).

In October of 2019, this Court considered the factors set forth in 18 U.S.C. § 3142(g). At that time, this Court noted that since 1989, defendant has been the subject of approximately 23 different court proceedings. In those cases, defendant accumulated 27 failures to appear. Supervision violations included, for example, the revocation of his Washington State Drug Offender Sentencing Alternative sentence in 2015 after a home visit revealed defendant had a rifle and two pipe bombs in his possession. Defendant is a felon prohibited from possessing firearms, yet allegedly possessed a firearm in furtherance of a drug trafficking crime. This, after

1 | he was sentenced by a state court to 17 months of incarceration for illegally possessing a firearm

2 | in 2016.

3 |       Although defendant offered to be subject to electronic home monitoring and drug testing,

4 | this Court concluded that defendant must be detained. This Court stated at that time:

5 |      Mr. Simmons, the basis of my decision largely has to do with how you've

6 |      conducted yourself while on supervision in the past, and my concern—that is an overriding concern here—is that you've shown a number of instances where you've

7 |      not been able to comply with terms and conditions of release. In addition to that, you've also shown situations where you've reoffended while being on supervision.

8 |      Those are very troubling to the Court, and no ankle bracelet is going to prevent that from happening again. I know that you're going to disagree with my decision, but

9 |      it is my opinion that there are no terms and conditions that are sufficient to protect the community and to guarantee that you're going to continue to comply with the terms and conditions of supervision.

10 | Oral Detention Order Ruling of Judge Creatura, Oct. 28, 2019, at 00:17:38, *United States v.*

11 | *Kenneth Francis Simmons* (No. CR19-5372 BHS).

12 |       The Court ordered defendant detained pending trial. Dkt. 31.

13 |       None of the intervening events caused by the health emergency affects those

14 | considerations.

15 |       The Court is aware of the impact that COVID-19 is having on the Western District of

16 | Washington community locally and across the globe. The situation is rapidly changing.

17 | According to the Bureau of Prisons' ("BOP") website, there are cases of inmates and staff at

18 | facilities in other states who have tested positive, and it is fair to assume that this will likely

19 | continue until the health emergency resolves. *See* https://www.bop.gov/coronavirus/index.jsp.

20 |       Yet, the Court cannot simply release defendant because of the risks associated with being

21 | incarcerated. If that were the case, virtually every pre-trial detainee would be released. *See U.S.*

22 | *v. Leonardo Munguia,* No. 3:19-cr-191-B (03), 2020 WL 1471741, at *4 (N.D. Texas, Dallas

23 | Div., March 26, 2020) ("Defendant's argument . . . applies equally to anyone in custody or, for

24 |

that matter, at the halfway house or anywhere else in this community or any other. . . . [T]he Court cannot release every detainee at risk of contracting COVID-19 because the Court would then be obligated to release every detainee.").  Rather, the Court must balance the risks associated with defendant remaining in custody with the risks associated with his release.  The Court is balancing three major concerns:

1. **Defendant's elevated risk factors**.  According to 18 U.S.C. § 3142(g)(3), the Court should consider the history and characteristics of the defendant, as well as his physical and mental condition.  Defendant offers testimony that he is in his mid-fifties and has high blood pressure.  According to the World Health Organization, these factors increase the risk for him over the general population.  *See* https://www.who.int/news-room/q-a-detail/q-a-coronaviruses. This factor weighs in favor of special consideration.

2. **Limitation on supervision caused by health emergency**.  In determining whether there are conditions of supervision that can minimize his risk to the community, this health emergency has severely limited those options.

   a. **Drug Testing**. In-person drug testing is not offered at present by the federal contractor in the Sequim area due to the COVID-19 outbreak.  If drug testing were to occur at all, a pretrial officer would be required to visit defendant's residence, wait outside while the specimen is collected, allow defendant to provide the sample outside the presence of the officer, then deliver the specimen to Seattle for testing.  Not only would this procedure be cumbersome, but it would not be in compliance with generally accepted standards of urine testing and sampling.  And, of course, the officer would need to handle the collected specimen, increasing the risk to the officer.

   b. **Location monitoring**. Standard devices for location monitoring require person-to-person contact.  Pretrial Officer Jamie Halvorson reported that her office is concerned about maintaining the safe distances required under the current pandemic and uses HAZMAT-like uniforms when applying these monitors to a defendant.  Then the device is subject to special handling when removed.  This monitoring method is now only practicable in a limited number of circumstances.
   Although a new "contact-free" app—SmartLink—allows for periodic location monitoring through a smart phone, it cannot provide 24-7 monitoring of defendant's location.

   c. **Residential placement.**  Although defendant's long-time friend has offered a home for defendant to stay, occupied by her and her nephew, both of them continue to be employed and have regular contact with the public.  The risks

associated with that contact have not been fully evaluated, but the Court can take judicial notice that simply living and working in today's world is nonetheless a challenge for all who continue to be so engaged—increasing defendant's risk of exposure simply by living in the same home. And Pretrial Officers no longer enter the home where a supervised defendant resides, further hampering their ability to evaluate defendant's compliance with court-imposed conditions of supervision.

3. **Conditions at the Federal Detention Center.** The Court has considered evidence regarding the conditions at the FDC in evaluating whether those conditions can potentially impact the health and safety of defendant. Based on the information provided, the FDC has taken a number of measures to protect against the spread of the virus. Officer Halvorson obtained information from Assistant Warden Green who advised her of the following: prisoners are in lockdown. No inmates are allowed in common areas. They take their meals in their cells. Their shower stalls are bleached and cleaned twice each day. Their in-person visitation with outside family and friends has been temporarily suspended. Telephones and computers are disinfected between each use. Bottles of soap have been distributed for self-cleaning and hand washing. If a prisoner begins to show cold or flu-like symptoms, the prisoner and his cellmate are isolated. As a result of these and other measures, there are presently no reported cases of COVID-19 at the FDC. Therefore, in weighing these factors, although remaining in a confined area with a number of other persons can certainly increase the risk of spreading the virus, it appears that the FDC is presently taking a number of steps to minimize that risk.

In summary, although there are risks associated with defendant's continued confinement, these do not eliminate or reduce the risks the Court originally considered in ordering his detention. Furthermore, supervising defendant has become even more problematic because of the limitations place on pretrial supervision caused by the health emergency. And the Court is unpersuaded that defendant's risk of exposure would be greatly reduced in his proposed place of residence. After considering the factors in 18 U.S.C. § 3142(g) and giving specific consideration to these factors in light of the existing health emergency, the Court finds that the risk factors associated with release outweigh the risk factors associated with continued detention. Therefore, defendant's motion is denied.

# IV. ORDER

(1) Defendant shall remain in detention pending trial in the custody of the Attorney General for confinement at the Federal Detention Center.

(2) The Clerk shall provide copies of this order to all counsel, the United States Marshal, and to the United States Probation and Pretrial Services Officer.

Dated this 8th day of April, 2020.

J. Richard Creatura
United States Magistrate Judge